Filed 6/25/13  P. v. Johnson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037644 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS102019) |
| v. | |
| KENNETH RAY JOHNSON, | |
| Defendant and Appellant. | |

Defendant Kenneth Ray Johnson pleaded no contest to being a felon on the grounds of a custodial facility, a felony, and to possession of not more than 28.5 grams of marijuana, a misdemeanor.  In April 2011, the court placed him on felony probation under various terms and conditions, including the condition that he serve 365 days in county jail.  A petition to revoke defendant's probation was later sustained in November 2011, and the court imposed an upper term sentence of three years in prison.  In doing so, the court awarded defendant a total of 123 days of presentence credits (83 days of custody credits and 40 days of conduct credits).

Defendant argues that in imposing the sentence, the court improperly considered defendant's conduct occurring after probation was granted.  He claims that the failure of his attorney to object to this error below constituted ineffective assistance of counsel that was prejudicial.  Secondly, he contends that he is entitled to 24 days of additional conduct credits under the latest amendment to Penal Code section 4019, which expressly

provides that it applies to defendants whose crimes were committed on or after October 1, 2011.[1] He argues that as a matter of statutory interpretation, the latest amendment to section 4019 must be applied retroactively. He contends further that prospective application of the amendment to section 4019 would violate his constitutional right to equal protection of the law.

We conclude that defendant's ineffective assistance of counsel claim has no merit because the trial court did not improperly consider defendant's post-probation conduct in its imposition of the sentence. Furthermore, even if counsel's performance was deficient, any error was harmless. We also reject defendant's claim of entitlement to additional conduct credits under the October 2011 amendment to section 4019. Last year, in *People v. Kennedy* (2012) 209 Cal.App.4th 385 (*Kennedy*), we rejected statutory interpretation and equal protection arguments identical to those raised by defendant here. We therefore will affirm the judgment.

## FACTS[2]

On August 21, 2010, defendant visited with a woman incarcerated in county jail. A deputy recognized him as a former inmate and it was determined that he was then on active parole status. Deputies made contact with defendant, who admitted that he was on parole. He was then arrested. During a search of his car, a quantity of approximately .08 grams of marijuana was found underneath the driver's seat.

## PROCEDURAL BACKGROUND

Defendant was charged in a complaint with being a felon on the grounds of a custodial facility, a felony (§ 4571), and possession of not more than 28.5 grams of marijuana, a misdemeanor (Health & Saf. Code, § 11357, subd. (b)). It was also alleged

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

[2] The facts underlying the conviction are derived from the report of the probation officer.

as an enhancement that defendant had suffered a prior violent or serious felony (i.e., a strike) within the meaning of section 1170.12, subdivision (c)(1), namely, voluntary manslaughter with a gang enhancement (§§ 192, subd. (a), 186.22, subd. (a)). Defendant thereafter waived a preliminary hearing and the parties stipulated that the matter be certified to superior court. On March 9, 2011, defendant pleaded no contest to both counts and admitted the enhancement with the understanding that he would be filing a motion to strike the enhancement under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. On April 20, 2011, the court granted defendant's *Romero* motion, suspended imposition of sentence, and granted defendant probation for three years on various terms and conditions, including the condition that he serve 365 days in the county jail.

A petition to revoke defendant's probation was filed one month later. After a formal hearing, the court found defendant to have violated the terms of his probation. On November 18, 2011, the court revoked and terminated probation, and imposed an upper term sentence of three years in prison. In doing so, the court awarded defendant 83 days of custody credits and 40 days of conduct credits for a total of 123 presentence credits. Defendant filed a timely notice of appeal of the sentence.[3]

After entry of judgment and in July 2012, defendant filed a motion for an award of additional conduct credits pursuant to section 4019, claiming an entitlement to additional conduct credits under the October 2011 amendment to section 4019; he sought a total of 137 days of presentence credits (i.e., 81 days of custody credits and 57 days of conduct credits). The court dropped the motion from calendar, indicating that "[t]he original sentence remains." Defendant filed a separate notice of appeal. An appeal from such a

---

[3] On the date the notice of appeal was filed, defendant's counsel filed a letter request for an award of additional presentence credits, seeking a total of 168 days of credits (84 custody and 84 conduct credits), which request was denied by the trial court.

postjudgment order affecting defendant's substantial rights is proper. (§ 1237, subd. (b); *People v. Hyde* (1975) 49 Cal.App.3d 97, 103.)

DISCUSSION

I.      *Claim of Improper Factors Used in Imposing Sentence*

A.      *Background and Contentions*

At the sentencing hearing on November 18, 2011, the prosecution requested that defendant's probation be revoked and that he receive an upper term prison sentence. Defense counsel indicated that his client did not want to continue with probation. Accordingly, counsel argued that defendant should receive a lower term sentence because the crime was a nonviolent one, the strike offense was over 10 years old, and his history was one of decreasing criminality.

The court indicated that it had reviewed both the probation report of April 2011 and the supplemental November 2011 probation report. It also noted that it had reviewed a number of letters submitted on behalf of the defense. The court, after hearing argument of counsel, indicated: "I'm going to impose the upper term. And I'll tell you why I'm going to do it. [¶] First of all, the factors in aggravation outweigh any type of mitigation. [¶] I agree with you, [defense counsel], based on decreasing seriousness but defendant started out pretty high,[4] so it would be rather difficult to have anything but decreasing seriousness. [¶] I do appreciate he has limited his criminal conduct and behavior, and it is decreasing. However, I do think that he has served two prior prison terms. He was on parole when this [current offense] was committed. He has not been successful on a grant of probation or parole, and I do think it outweighs." After indicating these reasons, the court continued with the following remarks, which are the basis for defendant's claim of error: "The other issue is he was ordered to serve 365 days back in April of this year and

_____

[4] The trial court was referring to defendant's 1997 felony conviction of voluntary manslaughter with a gang enhancement (§§ 193, subd. (a); 186.22, subd. (b)(1)).

4

he failed to do so, so he really owes the Court 365 days. [¶] So the appropriate issue is what is the appropriate sentence for failing to do what the Court ordered him to do? And there has to be a consequence for that. [¶] So probation is denied. I am going to commit you to the California Department of Corrections and Rehabilitation for the upper term of three years."

After the court imposed its sentence, defendant addressed the court. The court responded that it had read a letter submitted by defendant's wife and found it "very moving." The court then indicated: "I spent some time on this case yesterday, and the factors, your criminal history, I'm looking at this kind of stuff. And I do appreciate you have made strides. But I think the problem for the Court is the failure to report, the failure to surrender and your behavior and attitude and things that weigh [*sic*] of probation was concerning to the Court. So I am obligated to have some intellectual consistency to follow the factors in aggravation and mitigation, and I just feel in good faith, you got a break by having your strike stricken. [¶] You had an opportunity to be on probation. I am not holding it against you, but you wish to decline probation. I actually am very okay with that and I don't take that as a consideration. But once probation is off the table, the Court is obligated to go through the factors in mitigation and aggravation, and there's no way this is a lower term case. [¶] The factors in aggravation clearly outweigh the factors in mitigation, and I think the appropriate sentence is three years."

Defendant contends that the court erred in its imposition of the upper term sentence. He argues that the court relied on a legally impermissible reason—defendant's failure to surrender to serve his jail term that was a condition of the initial grant of probation—in reaching the conclusion that an upper term sentence was proper. He concedes that counsel below failed to object and that the claim is therefore forfeited. But he argues, nonetheless, that we should consider the claim of error because his trial attorney's failure to object constituted prejudicially ineffective assistance of counsel.

5

The Attorney General responds that the trial court did not consider improper factors (i.e., defendant's post-probation conduct) in imposing an upper term sentence, and therefore defense counsel's failure to object did not constitute ineffective assistance. She argues that the trial court's remarks concerning defendant's post-probation conduct, including his failure to surrender to serve his jail term, concerned the court's justification for revoking probation, and were not related to the imposition of the upper term sentence. The Attorney General asserts further that, even if counsel's performance was deficient in failing to object, it was not prejudicial because it is not reasonably probable that the court would have imposed a more favorable sentence in the absence of any assumed error.

B.    *Analysis of Ineffective Assistance Claim*

1.    *Applicable Law*

In evaluating defendant's ineffective assistance claim here, we first identify familiar applicable legal principles. A criminal defendant has the right to the assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) This constitutional right to counsel entitles a defendant not simply to "bare assistance," but rather to effective assistance. (*People v. Jones* (1991) 53 Cal.3d 1115, 1134.) This constitutionally adequate assistance requires that the attorney diligently and actively participate in the complete preparation of the client's case, and investigate all defenses of law and fact. (*People v. Pope* (1979) 23 Cal.3d 412, 425 (*Pope*), overruled on another ground, *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.) Ineffective assistance claims may be asserted in connection with trial counsel's allegedly deficient performance in connection with sentencing matters as well as alleged failings occurring during trial. (See *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1128-1130.)

An ineffective assistance claim requires a showing that "counsel's action was, objectively considered, both deficient under prevailing professional norms and prejudicial." (*People v. Seaton* (2001) 26 Cal.4th 598, 666, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) "[T]he burden is on the defendant to

6

show (1) trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Lewis* (1990) 50 Cal.3d 262, 288; see also *People v. Weaver* (2001) 26 Cal.4th 876, 961.)  This means that the defendant "must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to [the] defendant in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'  [Citations.]" (*People v. Kipp* (1998) 18 Cal.4th 349, 366, quoting *Strickland*, *supra*, 466 U.S. at p. 686.)

"[T]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'  [Citation.]"  (*People v. Lucas* (1995) 12 Cal.4th 415, 437 (*Lucas*), quoting *Strickland*, *supra*, 466 U.S. at p. 689; see also *People v. Vines* (2011) 51 Cal.4th 830, 876.)  The failure of counsel to object to certain evidence is rarely a successful basis for reversal of a conviction on ineffective assistance grounds. (*People v. Boyette* (2002) 29 Cal.4th 381, 424.)  The Supreme Court has noted that if "the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged," we must reject the claim on appeal "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation."  (*Pope*, *supra*, 23 Cal.3d at p. 426.)

The "prejudice" element requires a showing that "that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been more favorable to defendant, i.e., a probability sufficient to undermine confidence in the outcome."  (*In re Ross* (1995) 10 Cal.4th 184, 201.)  Prejudice requires a showing of "a ' "demonstrable reality," not simply speculation.'  [Citations.]"  (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

7

The defendant bears the burden of establishing an ineffective assistance claim. (*Lucas*, *supra*, 12 Cal.4th at p. 436; *Pope, supra,* 23 Cal.3d at p. 425.)  "Surmounting *Strickland*'s high bar is never an easy task.  [Citations.]"  (*Padilla v. Kentucky* (2010) 559 U.S. 356 [130 S.Ct. 1473, 1485].)

### 2. *Defendant's Ineffective Assistance Claim Lacks Merit*

We begin by acknowledging defendant's concession that trial counsel's failure to object to any sentencing error resulted in its forfeiture on appeal.  It is indeed true that under these circumstances, trial counsel's failure to object constituted a forfeiture of the appellate claim.  (*People v. Scott* (1994) 9 Cal.4th 331, 353 [forfeiture "doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"]; see also *In re Sheena K.* (2007) 40 Cal.4th 875, 881.)  We will therefore review defendant's claim in the context of the two-prong *Strickland* standard for a claim of ineffective assistance of counsel.

### a. *No Deficient Performance*

In evaluating whether there was deficient performance by trial counsel, we must first determine whether the court, as claimed by defendant, erred by allegedly improperly considering his post-probation conduct in imposing the upper term sentence.  We disagree with defendant that such error occurred.

Defendant correctly asserts that upon the revocation or termination of probation, the court may not consider events occurring after the original grant of probation in selecting the base term for sentencing.  (Cal. Rules of Court, rule 4.435(b)(1); see also *In re Rodriguez* (1975) 14 Cal.3d 639, 652 ["the primary term must reflect the circumstances existing at the time of the offense."].)[5]  The court therefore may not select

---

[5] "On revocation and termination of probation under section 1203.2, when the sentencing judge determines that the defendant will be committed to prison:  [¶] (1) If the imposition of sentence was previously suspended, the judge must impose judgment and sentence after considering any findings previously made and hearing and determining the

*(continued)*

a greater sentence based upon the defendant's conduct following the grant of probation. (*People v. Colley* (1980) 113 Cal.App.3d 870, 873 (*Colley*).)

We disagree with defendant, however, that the record demonstrates that the court erred by considering his post-probation conduct in imposing an upper term sentence. The prosecution argued that an upper term sentence was proper because factors in aggravation substantially outweighed any mitigating factors. It emphasized defendant's prior imprisonment for voluntary manslaughter with a gang enhancement and his continued contacts with gang members. The prosecution made no reference to defendant's post-probation conduct in its argument for imposing an upper term sentence. Further, the April 2011 report of the probation officer, which the court indicated it had reviewed, listed *no* factors in mitigation. In contrast, the probation officer noted *five* factors in aggravation in her report, namely, (1) the charged crime was carried out with planning, sophistication or professionalism; (2) defendant's prior convictions were numerous or of increasing seriousness; (3) defendant had served two prior prison terms; (4) defendant was on parole when he committed the charged crime; and (5) defendant's prior performance on probation or parole was unsatisfactory. (See Cal. Rules of Court, rule 4.421.)

In imposing an upper term sentence, the court noted three times its belief that the factors in aggravation outweighed those in mitigation, and it identified four of the five factors in aggravation mentioned in the probation officer's report. In exercising its discretion in imposing a lower, middle, or upper term sentence, "a trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems

matters enumerated in rule 4.433(c). [¶] *The length of the sentence must be based on circumstances existing at the time probation was granted, and subsequent events may not be considered in selecting the base term or in deciding whether to strike the additional punishment for enhancements charged and found.*" (Cal. Rules of Court, rule 4.435(b)(1), italics added.)

significant, subject to specific prohibitions. [Citations.]" (*People v. Sandoval* (2007) 41 Cal.4th 825, 848.) And a single factor in aggravation may justify a trial court's exercise of its sentencing discretion in imposing the upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 730; see also *People v. Black* (2007) 41 Cal.4th 799, 813.) Here, there were four such factors in aggravation supporting the trial's court's decision to impose an upper term sentence.

An appellate court, "[a]s an aspect of the presumption that judicial duty is properly performed, . . . presumes . . . that the [trial] court knows and applies the correct statutory and case law." (*People v. Coddington* (2000) 23 Cal.4th 529, 644, overruled on other grounds by *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) This general principle applies to a trial court's sentencing determinations. (See, e.g., *People v. Moran* (1970) 1 Cal.3d 755, 762 [decision to decline to commit adult to the youth authority]; *People v. Quicke* (1964) 61 Cal.2d 155, 159-160 [decision to impose death penalty]; *People v. Hooton* (1959) 53 Cal.2d 85, 88 [determination to impose life sentence].) And "[i]solated or ambiguous remarks by the trial court do not overcome that presumption. The party attacking the judgment must clearly and affirmatively demonstrate that the trial court relied on improper considerations. [Citation.]" (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 835.)

Here, the trial court clearly based its sentencing decision on proper factors. Its reference to defendant's post-probation conduct—after it explained that an upper term sentence was proper based upon the factor of aggravation outweighing any mitigating factors—cannot be conclusively read to support defendant's contention that the court relied on such conduct in imposing an upper term sentence. While we cannot agree with the Attorney General that the court's comments regarding defendant's post-probation conduct were unquestionably an explanation of its reasons for denying probation, we likewise do not agree with defendant that such comments reflected improper reliance on such conduct in imposing the upper term. Both positions are speculative as to the

10

meaning of the "[i]solated or ambiguous remarks by the trial court," and defendant has failed to overcome the presumption that the court knew and properly applied the law in making its sentencing determination. (*People v. Superior Court (Du)*, *supra*, 5 Cal.App.4th at p. 835.)

Defendant relies on *Colley*, *supra*, 113 Cal.App.3d 870 in support of his claim that the trial court relied on an improper sentencing factor. In *Colley*, the defendant was initially granted probation after pleading guilty to first degree burglary; he violated probation shortly afterward. Thereafter, the court initially sentenced him to a middle, three-year prison term, but later recalled the sentence and reinstated probation. (*Id.* at pp. 871-872.) After a second probation violation (resulting from a petty theft conviction), the court revoked probation and imposed an upper term sentence. (*Id.* at p. 872.) In doing so, the court unambiguously indicated that the basis for imposing an upper term sentence was the defendant's poor performance on probation. (*Ibid.*: "I think he's been asking for the high base term. The court has given him every conceivable break. . . [¶] . . . The court's tried every possible rehabilitative tool available to it and they have all failed. Perhaps long term custody will succeed where leniency and efforts of the court at rehabilitation have failed."])

*Colley* is distinguishable. Unlike in *Colley*, there were no unambiguous statements by the court that the reason it imposed an upper term sentence was defendant's poor performance on probation. Here, unlike in *Colley*, the court relied on appropriate factors in aggravation based upon matters existing at the time the crime was committed. And also unlike in *Colley*, the court had not imposed and then recalled a prison sentence less severe than the upper term sentence it ultimately imposed after probation was revoked and terminated.

Defendant also contends that *People v. Scott* (1984) 150 Cal.App.3d 910 (*Scott*) supports his claim. There, the defendant was convicted of robbery and car theft, which included a guilty plea on the former charge, based upon the understanding that he would

11

receive a maximum three-year prison sentence for both counts; the court imposed a three-year sentence, suspended it and referred the defendant to California Rehabilitation Center (CRC), and indicated that if he failed at CRC, the court would have the option of sentencing him to a prison sentence of up to five years and eight months. (*Id.* at pp. 912-913.) The defendant was later returned from CRC because of his violent behavior, and the court imposed a five-year prison sentence. (*Id.* at p. 914.) The appellate court held that the imposition of the greater sentence was improper because "[once a legal sentence has been pronounced . . . the trial court simply does not have jurisdiction to impose another, higher sentence at a later time. [Citation.]" (*Id.* at p. 918.) The *Scott* court also held that the trial court, in imposing the later, more severe sentence, improperly relied on the defendant's postconviction behavior at CRC. (*Id.* at p. 919.)

*Scott* presents a very different set of facts and offers no support for defendant's position. Here, the court did not impose an initial sentence, suspend it, and then purport to later impose a more severe sentence. And while in *Scott* (like *Colley*), the trial court clearly based its sentencing decision upon improper consideration of the defendant's postconviction conduct, the record does not show that the court did so here

Accordingly, since defendant has not demonstrated that the court in fact committed sentencing error, he has failed to make the concomitant showing that his trial counsel was ineffective in failing to object below.

b.      *No Prejudice*

Even were defendant to have shown in this appeal that his trial counsel's performance was deficient because he did not object at the sentencing hearing—which showing we have found defendant has not made—he is required to show prejudice in order to prevail on his ineffective assistance claim. (*Strickland*, *supra*, 466 U.S. at p. 687.) This second *Strickland* element requires a showing that "it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Lewis*, *supra*, 50 Cal.3d at p. 288.)

12

As noted, the probation officer identified five factors in aggravation and none in mitigation, and the court specifically identified four factors in aggravation and specifically found that they "clearly outweigh[ed]" any mitigating factors. The court stated further, in rejecting the position of defendant's trial counsel, that "there's no way this is a lower term case." And it expressly acknowledged factors that defendant claimed in mitigation. Those included defense counsel's argument that his client's more recent crimes were of "decreasing seriousness[,] but defendant started out pretty high, so it would be rather difficult to have anything but decreasing seriousness." The court also "appreciate[d that defendant] ha[d] limited his criminal conduct and behavior, and it [was] decreasing."[6]

From this record, even assuming counsel's performance was deficient, it is not reasonably probable that defendant would have received a more favorable sentence had trial counsel asserted an objection below. Having failed to show prejudice, defendant's ineffective assistance claim fails.

II.      *Claim of Additional Conduct Credits Under Section 4019*

     A.      *Background Concerning Section 4019*

Section 4019 permits a criminal defendant to earn additional credit prior to being sentenced by performing assigned labor (§ 4019, subd. (b)(1)) or by his or her good

---

[6] The report of the probation officer contained a summary of defendant's criminal convictions that consisted of a 1997 felony conviction of voluntary manslaughter with a gang enhancement (§§ 193, subd. (a); 186.22, subd. (b)(1)); a 1998 misdemeanor conviction of battery (§ 242); 1999 misdemeanor convictions of willful infliction of corporal injury upon a cohabitant or family member and witness intimidation (§§ 273.5, subd. (a); 136.1, subd. (a)); a 2000 felony conviction of possession of a controlled substance (Health & Saf. Code, § 11350); a 2003 misdemeanor conviction of battery upon a cohabitant or family member (§ 243.5, subd. (e)); and a 2004 misdemeanor conviction of contempt of court (§ 166, subd. (a)(4)). The probation officer also reported that defendant had suffered six traffic-related misdemeanor convictions between 1998 and 2008.

13

behavior during detention (§ 4019, subd. (c)(1)). Such credits are collectively referred to as "conduct credits." (*People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.) "The very purpose of conduct credits is to foster constructive behavior in prison by reducing punishment." (*People v. Lara* (2012) 54 Cal.4th 896, 906 (*Lara*).) Section 4019 has undergone a series of revisions since 2009. (See generally *People v. Garcia* (2012) 209 Cal.App.4th 530, 535-540.)

Senate Bill No. 18 (2009-2010 3d Ex. Sess.), enacted in October 2009, amended section 4019, effective January 25, 2010, to enhance the number of presentence conduct credits for certain offenders. (Stats. 2009, 3d Ex. Sess., ch. 28, § 50, p. 4427; the January 2010 amendment.) Under the pre-January 2010 formula for calculating credits under section 4019, a defendant could accrue conduct credit of two days for every four days of actual presentence custody. (Stats. 1982, ch. 1234, § 7, p. 4554 [former § 4019, subd. (f).) Under the January 2010 amendment, a qualifying defendant—persons other than those required to register as sex offenders, or those being committed to prison for, or who had suffered prior convictions of, serious felonies as defined in section 1192.7 or violent felonies as defined in section 667.5—could accrue conduct credit of two days for every two days of presentence custody, twice the previous rate. (Stats. 2009-2010, 3d Ex. Sess., ch. 28, §§ 50, 62 [Pen.Code, former § 4019, subds. (b), (c), & (f) ].)[7]

The statute was again amended by Senate Bill 76, effective September 28, 2010, to restore the two-for-four conduct credit calculation less favorable to defendants that had been in effect prior to January 25, 2010 (Stats. 2010, ch. 426, § 2). This amendment applied to persons in local custody for crimes committed on or after September 28, 2010,

---

[7] Significantly, defendant here, having suffered a prior conviction of voluntary manslaughter, which constitutes both a serious and violent felony, was not a person who qualified for the enhanced conduct credit formula of the January 2010 amendment to section 4019.

i.e., a date one month *after* defendant here committed the charged crimes. (Former § 4019, subd. (g), as amended by Senate Bill 76.)

And then, as part of the Realignment Act, the Legislature amended section 4019 a third time in Assembly Bill 109 (2011-2012 Reg. Sess.; Assembly Bill 109). Assembly Bill No. 109, which amended section 4019 effective July 1, 2011, authorized conduct credit for all local prisoners at the rate of two days for every two days spent in local presentence custody. (§ 4019, subds. (b) & (c), as amended by Stats. 2011, ch. 15, § 482.) Like the previous amendment to section 4019, the amendment in Assembly Bill 109 was to have prospective application only. (*Ibid.*) Before July 1, 2011—the operative date of Assembly Bill No. 109—Governor Brown signed Assembly Bill No. 117 (2011-2012 Reg. Sess.), which retained the enhanced conduct credit formula but changed the effective date to October 1, 2011. (Former § 4019, subd. (h), as amended by Stats. 2011-2012, ch. 39, § 53.)

On September 20, 2011, Governor Brown signed Assembly Bill No. 1X 17 (2011-2012 1st Ex. Sess.), the current version of section 4019 (hereafter, the October 2011 amendment), which retains the enhanced conduct credit provision—four days is deemed to have been served for every two days spent in actual custody. (Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 35; § 4019, subd. (f).) The statute expressly states that it is to apply prospectively. (§ 4019, subd. (h).)[8]

Defendant contends that he is entitled to additional conduct credits under section 4019. He asserts that he should be awarded a total of 145 days of presentence credits (i.e., 81 days of custody credits plus 64 days of conduct credits). He acknowledges that

---

[8] "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h).)

15

under former versions of section 4019, his admission that he had suffered a prior strike would otherwise compel calculating presentence conduct credit in his case on a "one-for-two" basis.  But he argues that "on both statutory and constitutional grounds," he is entitled to the increased level of conduct credits provided under the October 2011 amendment for all days he spent in custody after October 1, 2011.  We address these two contentions below.

### B. *Statutory Construction Claim*

Defendant claims that as a matter of statutory interpretation, he is entitled to the benefit of one-for-one conduct credits under the October 2011 amendment to section 4019 for all days spent in custody after October 1, 2011.  He claims that an ambiguity in subdivision (h) of section 4019 compels this conclusion.[9]  He argues:  "[S]ection 4019 does contain language declaring that it will operate prospectively when it states that it applies 'to prisoners who are confined . . . for a crime committed on or after October 1, 2011.'  (§ 4019, subd. (h).)  If the statute did not contain any contradictory language, then the prospective language would control.  However, in the very next sentence of the statute, the Legislature declared, 'Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law.'  (§ 4019, subd. (h).)  This language creates an ambiguity that requires the construction advanced by appellant because a defendant could not possibly earn days in presentence confinement on an offense which had not yet been committed.  As a result, this latter sentence becomes meaningless surplusage unless the more generous credit scheme applies to crimes committed before the stated date."

---

[9] As defendant acknowledges, this "potential ambiguity" was discussed, and his argument here is based upon, a case that is now depublished.  (See *People v. Olague* (2012) 205 Cal.App.4th 1126, review granted Aug. 8, 2012, S203298, review dismissed Mar. 20, 2013 (*Olague*).)

We rejected this argument in *Kennedy*, *supra*, 209 Cal.App.4th at pages 399 to 400. "We reiterate that according to the explicit language of the statute, the [October] 2011 amendment to Penal Code section 4019 applies only to crimes that were 'committed on or after October 1, 2011.' (Pen.Code, § 4019, subd. (h).)" (*Id.* at p. 399.) Similarly, the court in *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 51 (*Rajanayagam*) rejected an argument that the second sentence of section 4019, subdivision (h), "implies any days earned by a defendant after October 1, 2011, shall be calculated at the rate required by the current law, regardless of when the offense was committed." It concluded that such an interpretation would render meaningless the language in the first sentence (*ibid.*), which provides that the changes to the accrual of presentence conduct credit "shall apply prospectively and shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after October 1, 2011." (§ 4019, subd. (h).) The court in *Rajanayagam* concluded that adopting the defendant's interpretation would violate an elementary rule requiring courts, if possible, to ascribe meaning to every word, phrase, and sentence of a statute and to avoid interpretations that render some words superfluous. (*Rajanayagam*, at p. 51.)

We conclude that defendant is not entitled to the enhanced presentence conduct credits provided in the October 2011 amendment for the time that he was in custody after October 1, 2011 because of any perceived ambiguity in subdivision (h) of section 4019. (Accord, *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1552-1553.)

### C. *Equal Protection Challenge*

Defendant contends that the failure to give retroactive application to the October 2011 amendment constitutes a violation of the equal protection clauses of the federal and state Constitutions (U.S. Const., 6th Amend.; Cal. Const., Art. I, § 7). He claims that he, as a defendant who committed crimes before October 1, 2011, but who was incarcerated after that date, is similarly situated to an inmate who is in custody for committing a crime after October 1, 2011, and that there is no rational basis to justify the alleged disparate

17

treatment between these two groups.  Therefore, he argues, in order to avoid a violation of equal protection, the October 2011 amendment should be given retroactive application in his case.

The first prerequisite for a successful equal protection argument is " 'a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.]" (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199 (*Hofsheier*), quoting *In re Eric J.* (1979) 25 Cal.3d 522, 530.)  This inquiry by the court "is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)  The second requirement is that the challenger establish that there is no rational relationship to a legitimate state purpose for the state's having made a distinction between the two similarly situated groups. (*Hofsheier*, at pp. 1200-1201.)[10]

Last year, our Supreme Court decided in *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*) that prospective application of the January 2010 amendment of section 4019 did not violate equal protection principles, concluding that amendment did not create two similarly situated groups.  The Supreme Court noted that the "important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response.  That prisoners who served time before and

---

[10] Of course, there are three potential standards by which to measure the challenged classifications under an equal protection analysis—strict scrutiny, rational basis, and an intermediate level of review applicable to gender classifications. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1200.)  However, legislation is usually subjected to a rational basis analysis. (*Ibid.*)  This is the appropriate analysis here.

18

after former section 4019 took effect are not similarly situated necessarily follows." (*Brown*, *supra*, 54 Cal.4th at pp. 328-329.)[11]

In *Kennedy*, *supra*, 209 Cal.App.4th 385, we addressed the identical equal protection challenge to the October 2011 amendment to section 4019 raised by defendant here. While we acknowledged that *Brown*, *supra*, 54 Cal.4th 314, involved a prior amendment to section 4019 (*Kennedy*, at p. 396), we rejected the defendant's contention that he (Kennedy)—who committed his crime on March 11, 2011 (*id.* at p. 388)—was similarly situated with persons in jail who had committed crimes on or after the October 1, 2011 operative date of the challenged amendment to section 4019: "[T]he reasoning of *Brown* applies with equal force to the prospective-only application of the current version of section 4019." (*Id.* at p. 397; but see *Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 53-54 [distinguishing *Brown* by finding two groups were similarly situated with respect to equal protection challenge to October 2011 amendment]; *People v. Verba* (2012) 210 Cal.App.4th 991, 995-996 (*Verba*) [same].)[12]

Furthermore, the California Supreme Court, one month after deciding *Brown*, applied *Brown*'s analysis involving the January 2010 amendment to a defendant's argument that the October 2011 amendment should apply retroactively. Although

---

[11] In rejecting the defendant's equal protection claim, the high court in *Brown* distinguished *In re Kapperman* (1974) 11 Cal.3d 542, 545 (*Kapperman*), a case upon which the defendant relied (and upon which defendant here relies). In *Kapperman*, the court held that former section 2900.5, which awarded presentence custody credit only to individuals delivered to the Director of Corrections by the statute's effective date, bore no rational relationship to a legitimate government purpose. The *Brown* court held that *Kapperman* was inapposite because it concerned only presentence *custody* credits, a very different circumstance from *conduct* credits. (*Brown*, *supra*, 54 Cal.4th at p. 330.)

[12] Although the *Rajanayagam* and *Verba* courts found that the "similarly situated" prong had been met, the defendants' equal protection challenges in both cases nonetheless failed because the courts found that a rational basis existed for the October 2011 amendment's disparate treatment of the two groups. (*Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 54-56; *Verba*, *supra*, 210 Cal.App.4th at pp. 996-997.)

addressed only in a footnote, the high court rejected the defendant's contention that the prospective application of the October 2011 amendment violated equal protection: "Today local prisoners may earn day-for-day credit without regard to their prior convictions. (See § 4019, subds. (b), (c) & (f), as amended by Stats. 2011, ch. 15, § 482.) This favorable change in the law does not benefit defendant because it expressly applies only to prisoners who are confined to a local custodial facility '*for a crime committed on or after October 1, 2011.*' (§ 4019, subd. (h), italics added.) [¶] Defendant argues the Legislature denied equal protection [citations] by making this change in the law expressly prospective. We recently rejected a similar argument in *People v. Brown* (2012) 54 Cal.4th 314, 328-330.) . . . Accordingly, prisoners who serve their pretrial detention before such a law's effective date, and those who serve their detention thereafter, are not similarly situated with respect to the law's purpose. (*Brown*, at pp. 328-329.)" (*Lara*, *supra*, 54 Cal.4th at p. 906, fn. 9.) We thus reject defendant's equal protection challenge because he cannot establish that he was similarly situated with persons who commit crimes on or after October 1, 2011.

Even were we to conclude that defendant is similarly situated with persons in jail who had committed crimes on or after the October 1, 2011 operative date of the challenged amendment to section 4019, his equal protection challenge fails. As noted, no equal protection violation will be found "if the challenged classification bears a rational relationship to a legitimate state purpose. [Citation.]" (*Hofsheier*, 37 Cal.4th at p. 1200.) The court's inquiry is completed "[w]here there are 'plausible reasons' for [the classification]." (*Id.* at p. 1201.) As we held in *Kennedy, supra,* 209 Cal.App.4th at page 397, there is a plausible reason for the statutory classification challenged here.

As we explained in *Kennedy*: "[O]ur Supreme Court has acknowledged [that] 'statutes lessening the punishment for a particular offense' may be made prospective only without offending equal protection principles. (*Kapperman*, *supra*, 11 Cal.3d. at p. 546.) . . . [¶] In *People v. Floyd* (2003) 31 Cal.4th 179 (*Floyd*), the defendant sought to

20

invalidate a provision of Proposition 36 barring retroactive application of its provisions for diversion of nonviolent drug offenders. (*Id.* at pp. 183-184.) The court reiterated that the Legislature may preserve the penalties for existing offenses while ameliorating punishment for future offenders in order to ' "assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written." ' (*Id.* at p. 190.) The statute before the court came within this rationale because it 'lessen[ed] punishment for particular offenses.' (*Ibid.*) As the *Floyd* court noted, ' "[t]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time." [Citation.]' (*Id.* at p. 191.) [¶] 'The very purpose of conduct credits is to foster constructive behavior in prison by reducing punishment.' (*People v. Lara* (2012) 54 Cal.4th 896, 906.) As our Supreme Court accepted in *Brown*, *supra*, 54 Cal.4th 314, 'to increase credits reduces punishment.' (*Id.* at p. 325, fn. 15.) [¶] We gather that the rule acknowledged in *Kapperman* and *Floyd* is that a statute ameliorating punishment for particular offenses may be made prospective only without offending equal protection, because the Legislature will be supposed to have acted in order to optimize the deterrent effect of criminal penalties by deflecting any assumption by offenders that future acts of lenity will necessarily benefit them. [¶] . . . [¶] Although the statute at issue here does not ameliorate punishment for a particular offense, it does, in effect, ameliorate punishment for all offenses committed after a particular date. By parity of reasoning to the rule acknowledged by both the *Kapperman* and *Floyd* courts, the Legislature could rationally have believed that by making the 2011 amendment to section 4019 have application determined by the date of the offense, they were preserving the deterrent effect of the criminal law as to those crimes committed before that date. . . . We see nothing irrational or implausible in a legislative conclusion that individuals should be punished in accordance with the sanctions and given the rewards (conduct credits) in effect at the

21

time an offense was committed." (*Kennedy, supra,* 209 Cal.App.4th at pp. 398-399, fn. omitted.)

Therefore, even had defendant satisfied the "similarly situated" requirement for an equal protection claim, his challenge to the October 2011 amendment nonetheless fails because the classification between persons—those committing an offense prior to October 1, 2011, and those committing an offense on or after that date—bears a rational relationship to a legitimate state purpose. (*Kennedy, supra,* 209 Cal.App.4th at pp. 397-399; accord, *Rajanayagam, supra,* 211 Cal.App.4th at pp. 54-56; *Verba, supra,* 210 Cal.App.4th at pp. 996-997.)[13]

---

[13] We note that there are two cases, now depublished, addressing the question of retroactivity of the October 2011 amendment to section 4019 that were pending before the Supreme Court when this case was being briefed. In those cases, the high court granted review, issued orders deferring briefing pending the finality of its decision in *Brown, supra,* 54 Cal.4th 314, and thereafter dismissed review. (See *Olague, supra,* 205 Cal.App.4th 1126, review granted Aug. 8, 2012, S203298, review dismissed Mar. 20, 2013; *People v. Borg* (2012) 204 Cal.App.4th 1528, review granted Jul. 18, 2012, S202328, review dismissed Mar. 20, 2013.)

DISPOSITION

The judgment is affirmed.

_____
                                          Márquez, J.


WE CONCUR:




_____
     Elia, Acting P.J.




_____
     Bammatre-Manoukian, J.

23